**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

BRYCE FRANKLIN,

    Petitioner,

v.                                                      Civ. No. 1:20-cv-576 MIS/JFR

GEORGE STEPHENSON, Warden, and
HECTOR BALDERAS, Attorney General
for the State of New Mexico,

    Respondents.

**ORDER ADOPTING MAGISTRATE JUDGE'S
PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

**THIS MATTER** is before the Court on the Proposed Findings and Recommended Disposition (PFRD) by United States Magistrate Judge John F. Robbenhaar, filed February 16, 2022. ECF No. 51. As per Federal Rule of Civil Procedure 72(b)(2), and by enlargement granted by the Court, ECF No. 53, objections were due no later than March 16, 2022. Respondents filed their objections on that date. ECF No. 55. Petitioner has not filed a response. This matter is fully briefed and ready for decision.

**BACKGROUND**

The underlying Petition in this case is filed pursuant to 28 U.S.C. § 2254, but because Petitioner challenges the execution of his sentence as opposed to its validity, the Magistrate Judge appropriately analyzed the petition under 28 U.S.C. § 2241. *See Montez v. McKinna*, 208 F.3d 862, 865 (10th Cir. 2000); *McIntosh v. United States Parole Comm'n*, 115 F.3d 809, 811 (10th Cir. 1997) (§ 2241 petitions are used to challenge the execution of a sentence, including "deprivation of good-time credits"). Here, Petitioner

seeks the expungement from his record of a prison disciplinary action[1] and reinstatement of 60 days of earned good time credits that were forfeited. *See id.* at 13 (seeking "an Injunction ordering Respondents to expunge the disciplinary convictions from Franklin's institutional record."). Petitioner alleges a due process violation based upon the disciplinary hearing officer's (DHO) refusal to review allegedly exculpatory video footage and denial of Petitioner's request to submit relevant questions to prison officials during Petitioner's June 28, 2018 disciplinary proceedings. ECF No. 1 at 5; *see* ECF No. 9-2 at 75 ("Disciplinary Decision"). Petitioner claims Respondents failed to comply with a Department of Corrections policy that provides an inmate one hour to submit a urine sample when reasonable grounds to request that sample exist. *See* ECF No. 9-1 at 46 (N.M. Corrections Department, Policy CD-090501, "Urinalysis Testing of Inmates/Testing Unknown Substances").

After Respondents filed their Answer, the Magistrate Judge ordered Respondents to produce a copy of the videotape footage to the Court for its review. ECF No. 12. Respondents notified the court that the video recording had been destroyed. ECF No. 13. As a result, the Magistrate Judge issued an order to show cause, ECF No. 23, and ultimately conducted an evidentiary hearing wherein Respondents presented the testimony of several witnesses. *See* Docs. 49, 50 (Clerk's Minutes; Transcript). The Show Cause hearing examined the evidentiary issue regarding Respondents' obligation to preserve the videotape footage, which Respondents admittedly did not do. The Magistrate Judge analyzed the destruction of the videotape through Rule 37(e)'s lens of

---

[1] Respondents attach a copy of the "New Mexico Corrections Department Disciplinary Decision", dated July 10, 2018, which imposes sanctions on Petitioner. The Decision recommends sanctions for "Refusal to Submit to a Drug Test: 2nd offense" as (1) "60 days loss of Good Time", and (2) "60 days loss of (Canteen, Telephone, And All Electronics)". ECF No. 9-2 at 75.

spoliation, and the evidence taken informed the court's subsequent findings regarding Petitioner's procedural due process rights. ECF No. 51 at 2.

The Magistrate Judge recommends that the Court grant the Petition. ECF No. 51. Central to the Petition is Petitioner's effort to prove that he was not provided the full hour. Evidence taken at the Show Cause hearing included the testimony of four witnesses for Respondents—Jerry Brinegar, Kevin Quigley, John Rich and Jessica Herera. Mr. Franklin testified and was assisted by counsel previously appointed by the Court. ECF No. 50 (Transcript, of "Tr."). Respondents now lodge three principal objections: (1) the Magistrate Judge erred in applying *de novo* review; (2) the Magistrate Judge erred in finding Respondents had a duty to preserve and their non-preservation is sanctionable; and (3) the Magistrate Judge conflated the evidentiary and constitutional analyses. ECF No. 55.

This Court has conducted its *de novo* review of the case, including a thorough review of the evidence of record, and has considered each of Respondents' objections. *See United States v. Raddatz*, 447 U.S. 667, 674 (1980) (finding that a *de novo* determination, not a *de novo* hearing, is required when a party files objections to the magistrate judge's PFRD); *see also In re Griego*, 64 F.3d 580, 583-84 (10th Cir. 1995) (pursuant to 28 U.S.C. § 636(b), a *de novo* determination "requires the district court to consider relevant evidence of record and not merely review the magistrate judge's recommendation.") Having conducted its *de novo* determination, the Court overrules Respondents' objections as not supported by law. The Court therefore will adopt the PFRD.

I. **RESPONDENTS' OBJECTIONS**

    A. **Whether the Magistrate Judge Erred By Applying a De Novo Review**

Respondents first argue that the Magistrate Judge erred by applying a *de novo* review of the matters raised by Petitioner. Respondents state that the reclassification of an inmate's § 2254 petition to a § 2241 petition does not automatically necessitate *de novo* review. ECF No. 55 at 8. Respondents state that the proper level of review is the more deferential standard set forth in 28 U.S.C. § 2254(d). *Id.* at 9. The Court recognizes there exists a split in authority on this issue, but after close review is unable to say that the Magistrate Judge clearly erred.

The Court notes that the Tenth Circuit Court of Appeals, and various district courts throughout the Circuit, have reached differing results when reviewing petitions filed under § 2241, including § 2254 petitions that were construed under § 2241.[2] The Magistrate

---

[2] The lead case applying *de novo* review to § 2241 petitions is *Walck v. Edmondson*, 472 F.3d 1227 (10th Cir. 2007). The Court's research has revealed a number of decisions which adhere to *Walck*. *See e.g. Leatherwood v. Allbaugh*, 861 F.3d 1034, 1042-43 (10th Cir. 2017); *Macomber v. Baker*, 2019 WL 3996410 (D.Kan. August 23, 2019); *Thomas v. Parker*, 2009 WL 995547 (W.D. Ok. Apr. 13, 2009); *Thomas v. Jones*, 2008 WL 4693155 (W.D. Ok. Oct. 23, 2008); *Rascon v. Lopez*, 2012 WL 13076562, *3 (D.N.M. April 24, 2012). The circuit court opinion that initially recognized the distinct review standards also appeared to apply a *de novo* review. *See Montez v. McKinna*, 208 F.3d 862 (10th Cir. 2000) (classifying petition as a "hybrid" under both 2241/2254, but reviewing the "entire record" on appeal).

Other Circuits also apply a *de novo* review to § 2241 petitions. *See e.g. Gonzalez v. Justices of Mun. Ct. of Boston*, 382 F.3d 1, 6–7 (1st Cir. 2004), *judgment vacated on other grounds,* 544 U.S. 918 (2005)*; Martinez v. Caldwell*, 644 F.3d 238 (5th Cir. 2011); *Phillips v. Court of Common Pleas*, 668 F.3d 804 (6th Cir. 2012); *Stow v. Murashige,* 389 F.3d 880, 885–86 (9th Cir. 2004).

Notwithstanding the *Walck*-line of cases, some judges within the Tenth Circuit before and even after *Walck* have applied in § 2241 cases the deferential standard of review set forth in § 2254(d). Post-*Walck,* those cases include: *Gonzales v. Bravo,* 2011 WL 13291143, at *2 (D.N.M. Feb. 25, 2011) (Wormuth, M.J.) ("the deferential standard of § 2254(d) still applies as Gonzales' challenge was first heard in a state habeas petition."); *Brown v. Ulibarri*, 2008 WL 4739016, *2 (10th Cir. Oct. 30, 2008) (citing and applying the 28 U.S.C. § 2254(d) deferential standard of review to state prisoner's challenge under § 2241 to state court decisions regarding withholding and forfeiture of good time credits). Pre-*Walck* cases include: *Preble v. Estep*, 2006 WL 2212686, *2 (10th Cir. Aug. 4, 2006) (applying deferential standard in 28 U.S.C. § 2254(d) to a state prisoner's habeas petition under 28 U.S.C. § 2241 challenging a disciplinary conviction); *Branham v. Workman*, 2006 WL 950656, *1 (10th Cir. Apr. 13, 2006) ("applying the deferential standard required by 28 U.S.C. § 2254(d), (e)(1)" in a habeas petition arising under § 2241 for a disciplinary conviction); *Aquiar v. Tafoya*, 2004 WL 848417, *1 (10th Cir. Apr. 21, 2004) (§ 2241 petition challenging disciplinary conviction, stating that the applicable standard is "set forth under 28 U.S.C. § 2254(d)").

Judge here followed what appears to be the controlling view, *Walck v. Edmondson*, 472 F.3d 1227 (10th Cir. 2007), to apply *de novo* review. In *Walck*, the Tenth Circuit distinguished petitions which challenge the *execution* of a sentence from those which challenge a *conviction* and *imposition* of sentence, the former controlled by § 2241 and the latter by § 2254(d). 472 F.3d at 1234. *Walck* concluded that "[t]he deferential standard of review contained within § 2254 is, therefore, only properly invoked when an individual in state custody collaterally attacks the validity of a state conviction and/or sentence." *Id.* (citations omitted).

Here, Petitioner challenges the loss of 60 days of earned good time credits; at no time does he contest his conviction or the sentence itself. *See generally* ECF No. 1. Accordingly, his petition is properly construed under § 2241. Respondents attempt to distinguish *Walck* on the grounds that the petitioner there was a pre-trial detainee who was not in custody pursuant to the terms of a state-court judgment. ECF No. 55 at 10. While that is true, Respondents fail to explain how this distinction makes a difference.[3] § 2254(d) refers to a petitioner who is "in custody pursuant to the judgment of a State court" and who raises a claim "that was adjudicated on the merits in State court proceedings[.]" While the Court can see how a judgment and sentence are "adjudicated" by a state district judge "in State court proceedings", the Court struggles to see how decisions regarding the execution of that sentence by prison officials are similarly

---

[3] The Court notes that several opinions which follow *Walck* did not involve pre-trial detainees but inmates who were in custody pursuant to state court judgments and who challenged the execution of their sentence under § 2241. *See e.g. Leatherwood*, 861 F.3d 1034 (§ 2241 challenge to execution of sentence); *Rascon*, 2012 WL 13076562 (prisoner challenging disciplinary action against him); *Macomber*, 2019 WL 3996410 (same); *Thomas*, 2009 WL 995547 (same); *Thomas*, 2008 WL 4693155 (same); *Lamb v. Biggs*, 2012 WL 2679444 (D. Kan. Jul. 6, 2012) (prisoner filed § 2241 petition to challenge delay in review for parole eligibility). None of those opinions analyzed the distinction between a pre-trial detainee and an inmate in custody pursuant to a state court judgment.

"adjudicated" in a court of law. By including petitions which challenge the execution of a sentence within the realm of § 2254, Respondents' reading of the statute would mean that all state habeas petitions remain within § 2254. And in doing so, Respondents would then render superfluous § 2241. The Court is reluctant to embark on such a path. *See Pennsylvania Dep't of Pub. Welfare v. Davenport*, 495 U.S. 552, 562 (1990) (under the "surplusage cannon" of statutory interpretation, courts should be reluctant "to interpret a statutory provision so as to render superfluous other provisions in the same enactment."); *see also Hague v. Committee for Industrial Organization,* 307 U.S. 496, 529–530 (1939) (opinion of Stone, J.) (applying surplusage principle to interpreting any two provisions in the U.S. Code, even when Congress enacted the provisions at different times).

Respondents also cite to *Henderson v. Scott*, 260 F.3d 1213 (10th Cir. 2001), and argue that *Henderson* stands for the proposition that, in § 2241 proceedings involving individuals held in custody pursuant to a state court judgment, courts "still accord deference to the [state court's] determination of the federal constitutional issue." ECF No. 55 at 9; *see also* ECF No. 9 at 5 (Respondents' Answer). Yet, a close read of *Henderson* reveals that it cites § 2254(e)(1), which sets a presumption of correctness to state court factual findings, but nowhere cites § 2254(d). The Court finds *Henderson* inapposite.

One former magistrate judge in the District of New Mexico noted a decade ago that "the Tenth Circuit has crafted a muddled amalgamation of the limitations applicable . . . " to habeas petitions by state inmates and detainees. *Rascon v. Lopez*, 2012 WL 13076562, *3 (D.N.M. April 24, 2012) (Lynch, M.J.). Judge Lynch applied *Walck* and its *de novo* review because the petitioner there challenged the disciplinary sanctions imposed by the prison, which, as here, related to the manner in which his sentence was

being carried out. *Id.* at *4. Whether the current jurisprudence on the appropriate standard of review is "muddled" or not in the Tenth Circuit is arguable, but the loss of earned good time credits was effectuated by the prison authorities, and not a state court judge. This Court finds no clear error in the Magistrate Judge's application of *Walck* and its *de novo* standard of review. Respondents' objections on this issue are overruled.

### B. Whether Respondents Had a Duty To Preserve, Whether A Violation Of That Duty Was Sanctionable, and Whether There Was Sufficient Evidence Of Respondents' Intent Or Bad Faith

Next, Respondents turn to the spoliation issue and argue that the Magistrate Judge incorrectly found (1) that they had a duty to preserve the video recording, (2) that Petitioner requested production or review of the video, and (3) that Petitioner sufficiently requested preservation of the video recording. ECF No. 55 at 23. Respondents contend that their failure to preserve this evidence did not amount to sanctionable spoliation. *Id.* at 16. Respondents also argue that there was insufficient evidence of intent or bad faith on the part of Respondents to support a spoliation finding. ECF No. 55 at 26.

The procedural history of the case is aptly set forth in the PFRD and will not be repeated here. *See* ECF No. 51 at 3-6. The Magistrate Judge carefully considered that history to determine that Respondents had a duty to preserve the video, and that Petitioner sufficiently requested its preservation and review. Indeed, the Magistrate Judge pointed to seven instances where Petitioner placed Respondents on notice of his central claim: that he was not provided a full hour to provide a urine sample and that the video recording of the event is exculpatory and should be preserved. *Id.* at 13-14. The Court agrees with the Magistrate Judge that those seven instances placed Respondents on notice that they should preserve this evidence.

Respondents were aware of the importance of the video from the earliest moments of this dispute, as the DHO's summary of evidence and proceedings expressly state that Petitioner asked for the video to be reviewed in his defense, but that this request was treated as a "motion" and was denied. ECF No. 45-1 at 15. While Respondents can claim that a request for "review" is not a request for preservation, the central question is whether Respondents thereby knew or should have known that the specific evidence was relevant or may be relevant to future litigation. *See e.g. Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003) (putative litigants are under an "obligation to preserve evidence . . . when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation.") (citation omitted); *Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc.*, 244 F.R.D. 614, 620 (D. Colo. 2007) (same). The Court agrees with the Magistrate Judge that Respondents were placed on notice that they had a duty to preserve the video recording when Petitioner repeatedly stated that it would show he was not afforded a full hour.

Because the evidence was not preserved by Respondents, the Magistrate Judge next found that Petitioner suffered prejudice by the loss of this evidence. The Court sees no error here. Again, Petitioner's central claim is that the video recording would demonstrate that he was not afforded the full one-hour to provide a urine sample, and if that claim were borne out, then Respondents inappropriately forfeited 60 days of earned good time credits from him. By not being able to present this allegedly exculpatory evidence, Petitioner's case was limited to that of his word versus that of his jailer. Petitioner clearly suffered prejudice by the destruction of the video recording.

Finally, the Magistrate Judge analyzed whether Respondents had formed an intent or bad faith to deny Petitioner the allegedly exculpatory evidence. To that end, the Magistrate Judge considered the testimony of the witnesses at the Show Cause hearing. While this Court conducts a *de novo* determination and the Magistrate Judge's credibility findings are not protected by the clearly erroneous doctrine, *see Raddatz*, 447 U.S. at 674-76, great deference is nevertheless due to the credibility determinations made by a judge observing a witness testifying. *United States v. Burson*, 531 F.3d 1254, 1259 n.4 (10th Cir. 2008); *Wessel v. City of Albuquerque*, 463 F.3d 1138, 1145 (10th Cir. 2006). The Court sees no error in the Magistrate Judge's finding that the DHO's decision not to preserve the videotape in this case was willful.[4] The Magistrate Judge presided over the evidentiary hearing, observed the witnesses testify, and considered the testimony in light of the Petitioner's claims. The Magistrate Judge found that the prison's disciplinary hearing process was systematically flawed, as it gave no credence to Petitioner's constitutional rights, it showed favoritism to the Respondents, and it thwarted Petitioner's ability to present his defense to the disciplinary charge. ECF No. 51 at 19-20.

Indeed, the DHO testified that he did not retain or preserve any videotape footage in this case because he "had enough evidence to support my review for that particular motion to dismiss." ECF No. 50 at 53. Respondents suggest that the hearing officer's "not always perfectly understandable" testimony "demonstrated his belief that he was acting in according with DOC policies," ECF No. 55 at 25, yet whatever the hearing officer's

---

[4] This willfulness can be seen at other points in DHO's testimony. The DHO testified that his job was to "have the Department's back" in the disciplinary hearing. ECF No. 50 at 69:18-25. He claimed that he reviewed the video recording but he never looked at the timestamps and therefore never considered the exculpatory reason Petitioner advanced. *Id.* at 60-61. He also admitted that he told Petitioner that constitutional protections were not applicable in a prison disciplinary hearing. *Id*. at 50.

9

personal beliefs, his testimony revealed an intent to not respond to Petitioner's request. The Magistrate Judge has thoroughly established in the PFRD how the disciplinary hearing process was biased against Petitioner, and this Court sees no error in his finding that Respondents demonstrated bad faith by not preserving the videotape.

Having arrived at these findings, the Magistrate Judge then considered the appropriate remedy under Rule 37(e). The Magistrate Judge recommended the Court grant the Petition based on a violation of Petitioner's procedural due process rights, as opposed to crafting a remedy based only on the failure to preserve evidence. ECF No. 51 at 22. The Court turns to that analysis now.

### C. Whether the Magistrate Judge Erroneously Conflated Evidentiary and Constitutional Analyses

The Magistrate Judge found that Respondents failed to show cause why sanctions should not issue against them for their failure to preserve the videotape, ECF No. 51 at 22, but recommended relief based on the finding that Respondents' bad faith resulted in the denial of Petitioner's right to procedural due process, *id.* at 22; 37. Respondents claim that the Magistrate Judge's analysis "conflate[s] the evidentiary (spoliation) and constitutional (due process) analyses," by using the DHO's bad faith "as a proxy to establish the intent element of Rule 37(e)(2)." ECF No. 55 at 23. To the extent Respondents argue that it was improper for the Magistrate Judge to consider the evidence of bad faith/intent to deprive as support for a Rule 37 violation, the Court notes that the PFRD grants relief based on a procedural due process violation, and not spoliation. ECF No. 51 at 22 ("…the Court *independently* finds grounds for granting the habeas petition based on Respondents' bad faith in denying Petitioner his procedural due process rights…") (italics added). Respondents' argument is misplaced.

10

To satisfy the due process requirements in a disciplinary hearing involving the loss of good time credit, an inmate must receive:

> (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action.

*Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985) (citing *Wolff*, 418 U.S. at 563–67). The issue here concerns the second requirement, whether Petitioner was afforded the opportunity to call witnesses and present documentary evidence.

The Magistrate Judge presided over a lengthy hearing with numerous witnesses and was in the best position to assess the testimony and the credibility of the witnesses. While the hearing was convened to address possible spoliation, the Court is not aware of any decision or rule that limits a court's consideration of evidence offered to address a possible Rule 37(e) violation to that claim only, as opposed to a separate constitutional claim, and Respondents have not directed the Court to any such authority.

The Magistrate Judge found that the DHO exhibited bad faith and an intent to deprive Petitioner of his right to a fair disciplinary hearing. ECF No. 51 at 31. In the PFRD, the Magistrate Judge set forth witness testimony that shows how the disciplinary hearing process resulted in the violation of Petitioner's procedural due process rights. *Id.* at 22-31. Inmates are entitled to present documentary evidence in their defense so long as such review is consistent with institutional safety and correctional goals. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). The Magistrate Judge's finding—that Respondents failed to set forth any reasonable institutional safety concern that might justify the DHO's

11

refusal to view the video recording for its timestamp data—is therefore not clearly erroneous. ECF No. 51 at 30-31.

Similarly, by refusing to allow Petitioner to present any witness testimony that might have supported his position, Respondents effectively deprived Petitioner of the opportunity to rebut the disciplinary charges; Petitioner submitted questions for witnesses in his hearing, but the DHO repeatedly refused to allow them, deeming the questions as irrelevant "motions". *Id.* at 32. By completely shutting down Petitioner's right to present a defense—either by refusing to view the videotape for its timestamp data or by refusing to allow Petitioner to submit questions to witnesses—Respondents violated Petitioner's due process rights. *See Howard v. U.S. Bureau of Prisons*, 487 F.3d 808, 814 (10th Cir. 2007) (DHO's refusal to view videotape deprived petitioner of due process); *Crosby v. Fox*, 757 F. App'x 673, 677 (10th Cir. 2018) (no procedural due process violation when DHO advised petitioner of his rights during the disciplinary process, including the right to provide evidence and call witnesses on his behalf; "Mr. Crosby's due process rights were not violated as in *Howard* because the DHO reviewed the video as requested."). The Court sees no error in the PFRD's conclusion on this issue.

As noted above, the PFRD recommends that relief be granted under the procedural due process clause of the Fifth and Fourteenth Amendments, not Rule 37(e). That Respondents may have committed spoliation does not drive the granting of relief here; rather, Respondents deprived Petitioner of his procedural right to a fair hearing by preventing his meaningful participation, separate and apart from whether there was spoliation. *See Howard,* 487 F.3d at 813-15. Finding no error, the Court overrules

Respondents' objection as to the claimed "conflation" of evidentiary and constitutional analyses.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Respondents' objections are overruled and the Magistrate Judge's Proposed Findings and Recommended Disposition (ECF No. 51) is adopted. Respondents are ordered to restore to Petitioner the sixty (60) days of good time credits, and sixty (60) days loss of canteen/telephone and all electronics.

**IT IS SO ORDERED.**

_____
**MARGARET STRICKLAND**
UNITED STATES DISTRICT JUDGE